**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| AMMAR DEAN HALLOUM, | No. CV 11-0097-PHX-RCB (JRI) |
| Plaintiff, | **ORDER** |
| vs. | |
| CHARLES RYAN, et al. | |
| Defendants. | |

Plaintiff Ammar Dean Halloum brought this civil rights action under 42 U.S.C. § 1983 against various Arizona Department of Corrections (ADC) employees (Doc. 1). Three of the six Defendants have filed a Motion to Dismiss in part (Doc. 22).

The Court will grant Defendants' motion in part and deny it in part. The Court will also modify its Screening Order to recognize two claims under the Equal Protection Clause, and direct Brier to file an Amended Answer.

**I.    Background**

Plaintiff's claims arose while he was custody of the ADC (Doc. 1 at 1).[1] From December 2009 to July 8, 2010, Plaintiff was confined at the Arizona State Prison Complex (ASPC)-Florence North Unit, and thereafter he was confined at ASPC-Tucson, Whetstone Unit (id. at 3, 5B). Plaintiff named the following ASPC-Florence Defendants: (1) Huggins,

---

[1] Plaintiff is no longer in custody (Doc. 16).

a WIPP Coordinator;² Turner, a Correctional Officer (CO) III; Hernandez, a librarian; and Brier, the Master Chaplain (id. at 2A). Plaintiff named the following ASPC-Tucson Defendants: Deputy Warden Eherdt and Lieutenant Riharb (sued as "Rhibibe") (id.).³

In Count I, Plaintiff set forth First Amendment retaliation claims against Hernandez, Huggins, and Turner (id. at 3).

All of Plaintiff's other counts raise claims under the First Amendment Free-Exercise Clause and the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000-cc. In Count III, Plaintiff alleged that Brier denied Plaintiff a religious shaving waiver and, in Count IV, he claims that Brier refused to distribute a copy of the Quran to Plaintiff. In Count V, Plaintiff alleged that Eherdt failed to accommodate Plaintiff's fasting during Ramadan. Count VI alleged that Riharb prohibited Plaintiff and other Muslim inmates from holding communal prayer. And in Count VII, Plaintiff claimed that Eherdt failed to provide Plaintiff and other Muslim inmates with sufficient food because of their religious practices (id. at 5-5D).⁴ Plaintiff sued for money damages (id. at 6).

Brier, Eherdt, and Riharb now move to dismiss Counts III-VII on the grounds that (1) money damages are not available under RLUIPA, (2) there is no individual liability under RLUIPA, and (3) Plaintiff failed to exhaust administrative remedies for the claims in Counts V-VII against Eherdt and Riharb (id.).⁵

The Court will first address the arguments for dismissal under RLUIPA.

## II. RLUIPA Arguments

Defendants argue that pursuant to the United States Supreme Court holding in

---

²WIPP refers to the Work Incentive Pay Plan.

³On screening, the Court dismissed the ADC, Ryan, Clark, Canteen Inc., Coleman, Sauceda and Jackson as Defendants (Docs. 5, 31). Defendant Itenberg has not yet been served.

⁴The Court dismissed Counts II and VIII as barred by Heck v. Humphrey, 512 U.S. 477 (1994) (Doc. 5).

⁵Hereinafter, "Defendants" will refer only to Brier, Eherdt, and Riharb.

1  Sossamon v. Texas, --- U.S. ----, 131 S. Ct. 1651, 1663 (2011), in accepting federal funding, states do not consent to waive their sovereign immunity to private suits for money damages under RLUIPA; thus, Plaintiff's RLUIPA claims must be dismissed (id. at 2-3). They further argue that RLUIPA does not provide a private cause of action against state officials in their individual capacity because they do not directly receive federal funds (id. at 3-4).

In response,[6] Plaintiff first states that his Complaint did not seek monetary compensation solely under the First Amendment and RLUIPA (Doc. 26 at 3). Plaintiff asserts an equal-protection claim based on his allegations that he and other Muslim inmates were subject to discrimination and treated differently from other inmates belonging to other faiths (id.). He contends that this claim should not be dismissed (id.).

As to the whether RLUIPA allows for money damages, Plaintiff relies on the holding in Daker v. Ferrero, 2006 WL 346440, at *8-10 (N.D. Ga. Feb. 27, 2006), which found that the "appropriate relief" available under the statute was not limited to equitable or declaratory relief, and that monetary compensation was available (id. at 3-4). Plaintiff supports his individual-capacity claims with citations to cases establishing that conduct similar to Defendants' alleged conduct violates RLUIPA and the First Amendment (id. at 4-5).

## III. Discrimination Claim

At the outset, the Court addresses Plaintiff's assertion that his claims were not brought solely under RLUIPA and the First Amendment Free-Exercise Clause (Doc. 26 at 3). Plaintiff contends that he also alleged equal protection claims (id.). Defendants did not respond to this contention in their reply.

Upon review of Plaintiff's Complaint, the Court finds that some of Plaintiff's allegations are sufficient to state claims under the Equal Protection Clause. Accordingly, the Court finds cause to reconsider and modify its Screening Order. See City of Los Angeles, Harbor Div. v. Santa Monica, 254 F.3d 882, 885 (9th Cir. 2001) ("[a]s long as a district court

---

[6]The Court issued the Notice required under Wyatt v. Terhune, 315 F.3d 1108, 1120 n. 14 (9th Cir. 2003), which informed Plaintiff of his obligation to respond and the evidence necessary to successfully rebut Defendants' contentions (Doc. 25).

has jurisdiction over the case, then it possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient") (internal citations omitted).

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const., amend. XIV; see City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). A state practice that interferes with a fundamental right or that discriminates against a suspect class of individuals is subject to strict scrutiny. See City of Cleburne, 473 U.S. at 440-41. Absent allegations that he is a member of a suspect class, or that a fundamental right has been violated, a plaintiff must allege facts to support that he has been intentionally treated differently from others who are similarly situated without a reasonable basis therefor. See Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).

In Count III, Plaintiff alleged that Brier denied him a shaving waiver but Rastafarian and other similarly situated inmates were approved for religious shaving waivers (Doc. 1 at 5). Plaintiff claimed that Brier, without cause, subjected Plaintiff to unequal treatment (id.). Although Plaintiff did not expressly cite the Equal Protection Clause, his allegations are sufficient to support an equal-protection claim. See Alvarez v. Hill, 518 F.3d 1152, 1157 (9th Cir. 2008) (a complaint need only set forth claims for relief; it does not have to identify the statutory or constitutional source of the claims). The Court therefore finds that Plaintiff has stated an equal-protection claim against Brier in Count III.

Similarly, in Count IV, Plaintiff specifically alleged that while Brier refused to provide copies of the Quran to Plaintiff and other Muslim inmates, he readily provided other holy books to inmates of other faiths (Doc. 1 at 5A). Plaintiff claimed that Brier's conduct constituted unequal treatment compared to inmates of other faiths (id.). This adequately states a claim against Brier under the Equal Protection Clause.

There are no allegations in Count V that implicate the Equal Protection Clause (see id. at 5B). In Count VI, although Plaintiff stated that Riharb and Eherdt's conduct in denying

- 4 -

access to religious services and communal worship was "in violation of free exercise religion and equal protection," his allegations are insufficient to support an equal protection claim (id. at 5C). That is because in sharp contrast to Counts III and IV, in Count VI plaintiff wholly fails to allege that he was treated differently from others who were similarly situated to him. See Reeb v Thomas, 636 F.3d 1224, 1228 n. 4 (9th Cir. 2011) (citation omitted) (to extent inmate alleged equal protection violation, that claim "necessarily fail[s]" because he did not "present any facts demonstrating that he was treated differently from others who were similarly situated to him[]"). Lastly, there are no allegations in Count VII that support an equal-protection claim (id. at 5D).

Based on this review, the Court modifies its Screening Order to recognize equal protection claims against Brier in Counts III and IV. Brier will be directed to file an Amended Answer.

**IV.  RLUIPA Analysis**

    **A.  Governing Legal Standard**

Defendants move to dismiss under Federal Rule of Civil Procedure 12(b); however, they do not specific which provision of Rule 12(b) forms the basis for their motion. Because their first arguments challenge the legal sufficiency of Plaintiff's RLUIPA claims, Rule 12(b)(6) is applicable.

Rule 12(b)(6) tests the legal sufficiency of a claim and allows for dismissal for "failure to state a claim upon which relief can be granted." Cook v. Brewer, 637 F.3d 1002, 1004 (9th Cir. 2001). "'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Hinds Inv., L.P. v. Angioli, --- F.3d ----, 2011 WL 3250461, at *2 (9th Cir. Aug. 1, 2011) (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)). Dismissal is appropriate where there is "either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal claim." Hinds, 2011 WL 3250461, at *2 (citation omitted). At the same time, however, because Plaintiff is proceeding pro se, the Court "must construe his

complaint[ ] liberally even when evaluating it under the Iqbal standard." Johnson v. Lucent Techs. Inc., --- F.3d ----, 2011 WL 3332368, at *9 (9th Cir. Aug. 4, 2011) (citation omitted).

### B. Official Capacity

The Eleventh Amendment bars a suit against a state, its agencies, and state officials acting in their official capacity "unless Congress has abrogated state sovereign immunity under its power to enforce the Fourteenth Amendment or [the] state has waived it." Jachetta v United States, --- F.3d ----, 2011 WL 3250450, at *7 (9th Cir. Aug. 1, 2011) (quotation omitted). To abrogate a state's sovereign immunity, "Congress's intent must be 'unequivocally expressed.'" Id. Similarly, state sovereign immunity is waived "only where stated by the most express language or by such overwhelming implications from the text as will leave no room for any other reasonable construction.'" Id.; see Sossamon, 131 S. Ct. at 1658 ("a State's consent to suit must be 'unequivocally expressed' in the test of the relevant statute . . . [and] may not be implied") (citations omitted).

As noted by Defendants, the Supreme Court has expressly held that States do not consent to suit for money damages under RLUIPA "because no statute expressly and unequivocally includes such a waiver." Sossamon, 131 S. Ct. at 1663. The Supreme Court found that Congress, by using the phrase "appropriate relief," did not clearly manifest an intent to include a damages remedy when the defendant is a sovereign. Id. at 1659-60. On this point, Sossamon overruled Daker, the case on which Plaintiff relies.

Moreover, even before the Sossamon decision, the Ninth Circuit Court of Appeals held that RLUIPA does not authorize monetary damages against defendants in their official capacity. Holley v . Cal. Dep't of Corr., 599 F.3d 1108, 1112 (9th Cir. 2010). Plaintiff's claims for money damages against Defendants in their official capacity in Counts III-VII will therefore be dismissed.

### C. Individual Capacity

The Ninth Circuit has not ruled on whether RLUIPA allows for money damage claims against state actors in their individual capacity. Florer v. Congregation Pidyon Shevuyim, N.A., 639 F.3d 916, 922 n. 3 (9th Cir. 2011) ("[t]he Ninth Circuit has not ruled on this issue

in a precedential opinion, and we reserve this question for another day").[7] But in Florer, the Ninth Circuit observed that the Fifth, Seventh, and Eleventh Circuits have held that RLUIPA does not provide for individual-capacity claims for damages against prison officials. Id. (citing Sossamon v. Lone Star State of Texas, 560 F.3d 316, 328-29 (5th Cir. 2009); Nelson v. Miller, 570 F. 3d 868, 889 (7th Cir. 2009); and Smith v. Allen, 502 F.3d 1255, 1272 (11th Cir. 2007)). The Fourth Circuit has likewise ruled that individuals cannot be sued in their individual capacity for damages under RLUIPA. Rendelman v. Rouse, 569 F.3d 182, 188-89 (4th Cir. 2009). In addition, even absent Ninth Circuit case law squarely addressing the issue, numerous district courts within this Circuit have found that RLUIPA does not provide for individual-capacity damage claims. See, e.g., Florer v. Bales-Johnson, 752 F. Supp. 2d 1185, 1205-1206 (W.D. Wash. 2010); Parks v. Brooks., 2010 WL 5186071, at *1-2 (D. Nev. 2010); Sokolsky v. Voss, 2010 WL 2991522, at *2-4 (E.D. Cal. 2010); Harris v. Schriro, 652 F. Supp. 2d 1024, 1030 (D. Ariz. 2009).

These courts have applied a Spending Clause analysis to conclude that RLUIPA does not allow damages against defendants in their individual capacity. The Court finds no basis to depart from this weight of well-reasoned and sound authority.

Plaintiff's claims arise under Section 3 of RLUIPA, which provides that no government may impose a substantial burden on a prisoner's religious exercise, even if the burden results from a rule of general applicability, unless the government shows that the burden furthers a compelling governmental interest and is the least restrictive means of doing so. 42 U.S.C. § 2000cc-1(a). "This section applies in any case in which . . . (1) the

---

[7]The Court notes that the Ninth Circuit recently held that damages are available against a municipality sued under the land use provisions of RLUIPA. Centro Familiar Cristiano Buenas Nuevas v. City of Yuma, --- F.3d ---, 2011 WL 2685288, at *3 (9th Cir. July 12, 2011). Those provisions, 42 U.S.C. § 2000cc, were upheld as an exercise of Congress's Fourteenth Amendment enforcement powers. Guru Nanak Sikh Soc. of Yuba City v. County of Sutter, 456 F.3d 978, 986, 992-93 (9th Cir. 2006). As discussed herein, the RLUIPA provisions protecting prisoners, 42 U.S.C. § 2000cc-1, have been upheld as constitutional under the Spending Clause. Mayweathers v. Newland, 314 F.3d 1062, 1066-70 (9th Cir. 2002).

substantial burden is imposed in a program or activity that receives Federal financial assistance; or (2) the substantial burden affects, or removal of that substantial burden would affect, commerce with foreign nations, among the several States, or with Indian tribes." 42 U.S.C. § 2000cc-1(b)(1)-(2). Thus, Section 3 of RLUIPA was enacted pursuant to Congress's powers under the Spending Clause and the Commerce Clause. See Cutter v. Wilkinson, 544 U.S. 709, 715-16 (2005).

In this case, there are no allegations or evidence that "the substantial burden affects . . . commerce with foreign nations, among the several States, or with Indian tribes." 42 U.S.C. § 2000cc-1(b)(2). Consequently, Plaintiff's claims—that Defendants denied him religious practices and failed to accommodate fasting during Ramadan—do not implicate the Commerce Clause, and RLUIPA is analyzed solely as an exercise of Congress's Spending Clause power. Smith, 502 F.3d at 1274 n. 9; Sossamon, 560 F.3d at 328-29 n. 34.

Federal statutes enacted under Congress's spending power condition receipt of federal funds on a State's adherence to certain conditions, much like a contract. Smith, 502 F.3d at 1273-75 (citing Cutter, 544 U.S. at 715-16, and Pennhurst State Sch. & Hosp. v. Halderman, 451 U.S. 1, 17 (1981)). In Smith, the Eleventh Circuit explained that these federal statutes cannot subject a non-recipient of federal funds to private liability for damages. 502 F.3d at 1275. Individual RLUIPA defendants are not recipients of federal funding and are not parties to the contract in their individual capacity; only the State is. Id. It follows that only the State may be liable for a RLUIPA violation. Id.; see Sossamon, 560 F.3d at 328-39 (same). According to the Seventh Circuit, "[c]onstruing RLUIPA to provide for damages actions against officials in their individual capacities would raise serious questions regarding whether Congress had exceeded its authority under the Spending Clause." Nelson, 570 F.3d at 889.

The Ninth Circuit has held that RLUIPA is constitutional under the Spending Clause. Mayweathers, 314 F.3d at 1066-70. Therefore, following the rationale set forth by the Eleventh Circuit in Smith and adopted by numerous others courts, Plaintiff cannot obtain monetary damages against Defendants in their individual capacity for alleged RLUIPA

violations. Plaintiff's RLUIPA claims against Defendants in their individual capacity in Counts III-VII will be dismissed.

## V. Exhaustion

### A. Defendants' Motion

The Court now turns to Defendants' argument that, as to the remaining First Amendment claims in Counts V-VII, Plaintiff failed to exhaust available administrative remedies as required under the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(e) (Doc. 22 at 4-8). As stated above, Count V alleged that Eherdt failed to accommodate Plaintiff's fasting during Ramadan, Count VI alleged that Riharb prohibited Plaintiff and other Muslim inmates from holding communal prayer, and Count VII alleged that Eherdt failed to provide Plaintiff and other Muslim inmates with sufficient food because of their religious practices (Doc. 1).

Defendants submit the declaration of Aurora Aguilar, a Hearing Officer at the ADC's Central Office in Phoenix (Doc. 22, Ex. A, Aguilar Decl. ¶ 1). Attached to Aguilar's declaration is a copy of Department Order (DO) 802, Inmate Grievance Procedure, which describes the four steps in the grievance process: (1) an informal complaint in an Inmate Letter to the CO III; (2) a Formal Grievance to the Grievance Coordinator, (3) a first-level Inmate Grievance Appeal to the Warden; and (4) an Inmate Grievance Appeal to the Director (id., Ex. A, Ex. 1, 802.02-802.05). Aguilar avers that she maintains a computerized log of all non-medical grievance appeals submitted to the Director and, upon her review, she found no Inmate Grievance Appeals to the Director's level related to Plaintiff's claims in Counts V-VII (id., Ex. A, Aguilar Decl. ¶¶ 4-5, 9).

Defendants also submit the declaration of Ron Schmidt, the Grievance Coordinator at the ASPC-Tucson, Whetstone Unit (id., Ex. B, Schmidt Decl. ¶ 1). Schmidt states that he maintains a log of all processed grievances (id. ¶ 5). Schmidt describes in detail a number of grievances filed by Plaintiff; none of the described grievances relate to Plaintiff's claims in Counts V, VI, or VII (see id. ¶¶ 8-31).

Based on this evidence, Defendants contend that Plaintiff failed to exhaust administrative remedies, and they move for dismissal of Counts V-VII (Doc. 22 at 8).

**B.     Plaintiff's Response**

Plaintiff submits copies of grievance documents that he claims show his attempts to exhaust the claims in Counts V-VII (Doc. 26, Ex. D, Exs. 1-11). Plaintiff states that he filed Inmate Letters, Inmate Grievances, and Appeals to the Warden; however, he did not file any Appeals to the Director because (1) the Warden refused to rule on his appeals, (2) the Warden referred Plaintiff to a CO IV, and (3) the CO IV informed Plaintiff that his grievances were no longer available because Ramadan was over (id. at 6-7). Plaintiff also states that Chaplain Winslow responded to an Inmate Letter by informing Plaintiff that because Ramadan is over, the issues raised in Plaintiff's grievance can no longer be addressed (id. at 7, Ex. D, Ex. 11). Based on this evidence, Plaintiff argues that he was reliably informed that administrative remedies were not available and exhaustion was therefore not required (id.).

**C.     Defendants' Reply**

In reply, Defendants argue that Plaintiff failed to properly exhaust his grievances (Doc. 27 at 3). According to Defendants, Plaintiff's exhibits show that (1) his grievances were unprocessed because he failed to attach copies of informal attempts to his grievance forms as required; (2) he improperly submitted Inmate Letters to the Deputy Warden instead of the CO III; and (3) he failed to offer a resolution as required under policy (id. at 3, citing Doc. 26, Ex. D, Exs. 4, 7).

With respect to Chaplain Winslow's Inmate Letter response to Plaintiff, Defendants state that as a Chaplain, Winslow is not involved in the inmate grievance process and he responded to Plaintiff's grievance only as a courtesy (Doc. 27 at 4). Defendants also note that Winslow's response did not prevent Plaintiff from filing an Inmate Grievance Appeal and other Inmate Letters related to his claims concerning Ramadan (id., citing Doc. 26, Ex. D, Exs. 8-10).

. . .

## VI. Exhaustion Legal Standard

Under the PLRA, a prisoner must exhaust available administrative remedies before bringing a federal action. See 42 U.S.C. § 1997e(a); Griffin v. Arpaio, 557 F.3d 1117, 1119 (9th Cir. 2009). Exhaustion is required for all suits about prison life, Porter v. Nussle, 534 U.S. 516, 523 (2002), regardless of the type of relief offered through the administrative process, Booth v. Churner, 532 U.S. 731, 741 (2001). A prisoner must complete the administrative review process in accordance with the applicable rules. See Woodford v. Ngo, 548 U.S. 81, 92 (2006).

Exhaustion is an affirmative defense. Jones v. Bock, 549 U.S. 199, 212 (2007). Thus, the defendant bears the burden of raising and proving the absence of exhaustion. Wyatt, 315 F.3d at 1119. Because exhaustion is a matter of abatement in an unenumerated Rule 12(b) motion, a court may look beyond the pleadings to decide disputed issues of fact. Id. at 1119-20. Further, a court has broad discretion as to the method to be used in resolving the factual dispute. Ritza v. Int'l Longshoremen's & Warehousemen's Union, 837 F.2d 365, 369 (9th Cir. 1988) (quotation omitted). If a court finds that the plaintiff failed to exhaust administrative remedies, the proper remedy is dismissal without prejudice. Wyatt, 315 F.3d at 1120.

## VII. Analysis

At issue is whether the grievance documents proffered by Plaintiff demonstrate exhaustion of Plaintiff's claims in Counts V-VII. There is no question that the issues raised in Plaintiff's grievance documents concern the allegations in his Complaint; however, Defendants contend that Plaintiff did not properly follow the grievance procedures (Doc. 27 at 3-4). As stated, to properly exhaust, Plaintiff must comply with the procedural rules set forth in the prison's grievance policy. See Woodford, 548 U.S. at 90-91.

Under DO 802, a prisoner must submit his Inmate Letter to his CO III (Doc. 22, Ex. A, Ex. 1, 802.02 § 1.2). Some of Plaintiff's proffered Inmate Letters are addressed to the CO IV or the Deputy Warden, and within those Inmate Letters, Plaintiff offers no

explanation why he did not submit his complaints to the proper official (Doc. 26, Exs. 1, 3).[8] Under Woodford, these Inmate Letters do not comply with the procedural rules and fail to support exhaustion. 548 U.S. at 90-91. One of these Inmate Letters concerns Plaintiff's claim in Count VII concerning Eherdt's alleged failure to provide sufficient food because of Plaintiff's religious practices (Doc. 26, Ex. 3 (Aug. 20, 2010 Inmate Letter)). Consequently, Count VII will be dismissed for failure to exhaust.

Plaintiff's evidence includes two Inmates Letters that are properly addressed to the CO III; thus, the Court must examine whether the complaints raised in these Inmate Letters were properly exhausted (id., Exs. 2, 5).

### A. Grievance Initiated on August 17, 2010

The first Inmate Letter, dated August 17, 2010, is addressed to CO III Reyes and relates to Count V; it requests accommodation of meal times given that during Ramadan, Muslim inmates fast from dawn to sundown (id., Ex. 2). Plaintiff suggests meals times that correlate to sunrise and sunset and that would allow Muslim inmates to observe their religion (id.). Plaintiff states that Reyes failed to respond to his Inmate Letter; therefore, he filed an Formal Grievance on September 1, 2010 to CO IV Schmidt, the Grievance Coordinator (Doc. 26, Ex. D, Pl. Decl. ¶ 5, Ex. 4). The grievance procedures provide that if an inmate does not receive a response at any level in the grievance process, he may proceed to the next step (Doc. 22, Ex. A, Ex. 1, 802.01 § 1.11).

Schmidt returned the Formal Grievance to Plaintiff as "unprocessed" on the ground that Plaintiff failed to attach a copy of the August 17, 2010 Inmate Letter to the Formal Grievance (id., Ex. 4 (Sept. 2, 2010 Resp.)).

---

[8]In one Inmate Letter, dated August 23, 2010, and addressed to the Deputy Warden, Plaintiff states that he had previously submitted requests for informal resolution to the Deputy Warden and CO III Reyes on August 12, 17, and 20 (Doc. 26, Ex. D, Ex. 3). Under the grievance policy, officials have 15 work days to respond to an Inmate Letter (Doc. 22, Ex. A, Ex. 1, DO 802.02 § 1.3.2). Thus, the time to respond to the previous requests for informal resolution had not yet expired when Plaintiff filed his August 23 Inmate Letter, and there was no basis for submitting the Inmate Letter to the Deputy Warden instead of the CO III as required.

On September 10, 2010, Plaintiff submitted another Formal Grievance to Schmidt in which he referenced the August 17, 2010 Inmate Letter to Reyes and indicated he received no response (id., Ex. 7 (second Sept. 10, 2010 Formal Grievance)). The September 10, 2010 Inmate Grievance was returned unprocessed—along with two other Formal Grievances filed the same day—because Plaintiff did not offer any resolution and did not attach any informal attempts (id. (Sept. 28, 2010 Resp.)).

On October 3, 2010, Plaintiff filed an Inmate Grievance Appeal to the Warden to appeal Schmidt's failure to process his September 10, 2010 grievances (id., Ex. 8). On his appeal form, Plaintiff noted that there was no case number because his cases were "rejected twice despite the fact of filing informal before the grievance" (id.). There was no response to this Inmate Grievance Appeal (id., Ex. D, Pl. Decl. ¶ 10).

Plaintiff therefore filed two Inmate Letters with the Warden inquiring about the lack of a response. In response to the first, the Warden told Plaintiff that responses from the CO IV were forthcoming (id., Ex. 9). And in response to the second, the Warden asked Plaintiff to follow up with Schmidt (id., Ex. 10). When Plaintiff spoke to Schmidt at the end of November, Schmidt told him that grievances on the Ramadan issues were not available because Ramadan was over (id., Ex. D, Pl. Decl. ¶ 12).

Finally, Plaintiff received an Inmate Letter response from Chaplain Winslow; Winslow states that he is responding to Plaintiff's August 20, 2010 Inmate Letter (id., Exs. 3, 11). Winslow stated that Plaintiff failed to follow the grievance policy because this Inmate Letter was improperly directed to the Deputy Warden; but, nevertheless, Winslow informed Plaintiff that Ramadan issues can no longer be addressed since Ramadan is over (id., Ex. 11).

The Court finds that this evidence demonstrates Plaintiff's failure to exhaust remedies for the claim raised in the August 17, 2010 Inmate Letter. Plaintiff contends that he attempted to exhaust his claim but remedies became unavailable. Indeed, Plaintiff was only required to exhaust *available* remedies. Brown v. Valoff, 422 F.3d 926, 936-37 (9th Cir. 2005); see Sapp v. Kimbrell, 623 F.3d 813, 822 (9th Cir. 2010) (a prisoner's failure to exhaust may be excused where administrative remedies were effectively unavailable).

Relevant evidence as to whether remedies were available includes official directives that explain the review process and "information provided to the prisoner concerning the operation of the grievance procedure . . . , such as the response memoranda in these cases." Brown, 422 F.3d at 937. Here, the Grievance Coordinator's response included specific written instructions to Plaintiff to attach a copy of his Inmate Letter to his Formal Grievance (id., Ex. 4 (Sept. 2, 2010 Resp.)). Plaintiff failed to do so when he re-filed his grievance. He therefore failed to comply with the procedural rules, and dismissal for nonexhaustion is warranted. See Woodford, 548 U.S. at 90.

In the alternative, even if Plaintiff's failure to attach a copy of his Inmate Letter to the Formal Grievance was excused, he still failed to exhaust remedies. Although he filed an Inmate Grievance Appeal, he failed to submit a final appeal to the Director. Instead, Plaintiff re-started the grievance process by filing Inmate Letters that complained about the lack of responses. These Inmate Letters do not serve to exhaust his complaint.

The Court notes that Chaplain Winslow's Inmate Letter response, which states that Ramadan issues can no longer be addressed, is troubling because, in effect, it informed Plaintiff that remedies were not available (id., Ex. 11). However, this information came in response to an Inmate Letter that was improperly addressed to the Deputy Warden (id., Ex. 3), and Winslow informed Plaintiff that his Inmate Letter did not comply with the grievance policy (id., Ex. 11). Therefore, Winslow's response does not result in a finding that exhaustion is excused.

In sum, Count V, which alleges that Eherdt failed to accommodate Plaintiff's fasting during Ramadan, will be dismissed for nonexhaustion.

**B.     Grievance Initiated on September 6, 2010**

Plaintiff's second Inmate Letter, which relates to Count VI, was properly submitted to a CO III on September 6, 2010, and it complained that Riharb refused to allow inmates to bring their prayer rugs to the chow hall (Id., Ex. 5). On September 14, 2010, CO III Neil responded to this Inmate Letter (id. (Sept. 14, 2010 Resp.).

On September 17, 2010, Plaintiff timely appealed Neil's response by filing a Formal Grievance to the Grievance Coordinator (id., Ex. 6). In this grievance, Plaintiff proposed as a resolution compensation, a written apology, a promise that the violations will not reoccur, and training for all officers (id.). Plaintiff also referred to his September 6 Inmate Letter and the September 14 response thereto, and he noted that both documents were attached to the Formal Grievance (id.). Plaintiff avers that this Formal Grievance was returned unprocessed; however, there was no explanation for why it was unprocessed (id., Ex. D, Pl. Decl. ¶ 7, Ex. 6).

In their reply, Defendants do not address this particular grievance or explain why it was unprocessed (see Doc. 27). They merely assert that Plaintiff's grievances were unprocessed because he did not follow the inmate grievance policy by attaching copies of his informal attempts at resolution and he did not offer any resolutions (id. at 2-3). But the face of the September 17, 2010 grievance shows that Plaintiff did, in fact, attach copies of his informal attempts and propose a resolution (Doc. 26, Ex. D, Ex. 6).

The Ninth Circuit has recognized an exception to the exhaustion requirement where prison officials improperly screen an inmate's grievance. Sapp, 623 F.3d at 823. "If prison officials screen out an inmate's appeals for improper reasons, the inmate cannot pursue the necessary sequence of appeals, and administrative remedies are therefore plainly unavailable." Id. This exception to the exhaustion requirement promotes the purpose of the requirement by ensuring that prison officials will consider grievances and work to resolve them internally and by promoting the use of administrative proceedings to develop a record. Id.

Plaintiff's evidence demonstrates that he filed a Formal Grievance that complied with the procedural rules but it was improperly screened and designated as unprocessed (Doc. 26, Ex. D, Pl. Decl. ¶ 7, Ex. 6). Under Sapp, this rendered administrative remedies unavailable. 623 F.3d at 823. In failing to respond to Plaintiff's evidence, Defendants cannot meet their burden to show nonexhaustion. Defendants' request to dismiss Count VI for failure to exhaust will therefore be denied.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is **withdrawn** as to Defendants' Motion to Dismiss (Doc. 22).

(2) With **20 days** from this Order, Brier must file an Amended Answer to include responses to Plaintiff equal-protection claims in Counts III and IV.

(3) Defendants' Motion to Dismiss (Doc. 22) is **granted in part** and **denied in part** as follows:

> (a) the motion is **granted** as to Plaintiff's RLUIPA claims in Counts III-VII;
>
> (b) the motion is **granted** as to Plaintiff's First Amendment claims in Counts V and VII; these two claims are dismissed for failure to exhaust administrative remedies.
>
> (c) the motion is otherwise **denied**.

(4) Eherdt is dismissed as a Defendant.

(5) Counts V and VII are dismissed.

(6) The remaining claims are:

> (a) Count I—First Amendment retaliation claims against Hernandez, Huggins, and Turner;
>
> (b) Count III—First Amendment free-exercise claim and equal protection claim against Brier for the denial of a religious shaving waiver;
>
> (c) Count IV—First Amendment free-exercise claim and equal protection claim against Brier for the refusal to distribute a copy of the Quran; and
>
> (d) Count VI—First Amendment free-exercise claim against Riharb for the denial of communal prayer.

DATED this 4th day of October, 2011.

_____
Robert C. Broomfield
Senior United States District Judge